the Honorable the judges of the United States Court of Appeals for the 4th Circuit oh yay oh yay oh yay all persons having any manner or form of business before the Honorable the United States Court of Appeals for the 4th Circuit are admonished to give their attention for the court is now sitting God save the United States and this Honorable Court good afternoon we are very happy to have you here today although we are sorry it's not in person we will begin with our first case United States versus via and miss Hester will hear from you thank you your honor may it please the court for a year before arresting him police had been investigating Francisco via on suspicion of drug offenses without finding sufficient evidence for probable cause as a district court recognized the police retired from waiting and was ordered to a pretextual traffic stop which culminated in a warrantless search of mr. B's home and a subsequent arrest for possessing marijuana drug paraphernalia and guns the district court concluded that be his consent to the search was involuntary and suppressed its fruits which led to dismissal of the original alien with a firearm charge but after losing the suppression issue the government charged via with aggravated illegal reentry which presents the court with several constitutional issues I'll address why be his fingerprints and the records found with them should be suppressed as a fruit of the unlawful search and then I'll address the vindictive prosecution issue the district court relied on a legally erroneous interpretation of this court's decision and Oscar Torres when it denied via's motion to suppress the court ruled that the exclusionary rule only applies to the fingerprints if officers arrested via for the investigative purpose of obtaining his fingerprints and the fingerprints were not obtained during a routine booking process yes miss Hester I'm sorry to sort of a threshold question about the the suppression and exclusionary exclusionary rule analysis here I'm having trouble with the very first step in the analysis right which is that the evidence has to be discovered because of an illegal seizure and and that's sort of the bare minimum and then even after that we asked some additional question which you know we are here to discuss under Davis and Hayes and our decision in Oscar Torres but I don't need I am not clear as to why we're even in that territory here because it doesn't look to me as though the illegal Fourth Amendment search here which was the search of the home was necessary to getting the fingerprints because it seems as though your client there was probable cause to arrest your client on illegal search of the home and probable cause to bring him in on the federal unlawful presence charge based on the statements he made during the legal encounter on the street so I don't know if I'm framing my question right but it seems to me we don't even have but for causation here and that's sort of the bare minimum and then you get into the question of what else you need well I think that's actually more a question of inevitable discovery and the government has the burden of proving inevitable well discovery underneath the question why is it and I don't think it is an inevitable discovery question I guess I'm asking why isn't it just the like the first-order question did they get this evidence because of the illegal search of the house and if the answer is he was arrested and could have been arrested based only on the evidence from the legal encounter on the street because I believe the evidence the that they didn't want to arrest him for those charges and furthermore with respect to the state charges the only contraband found before the search of his home was drug paraphernalia and an arrest for that charge doesn't even result in fingerprinting under the North Carolina statute so as far as that's concerned that wouldn't have resulted in fingerprints they had to get the fingerprints in another way but the officer testified repeatedly that he wasn't under arrest at the point where they found the vape gun in his pocket and he had had the discussion with him in fact he testified that they arrested him on the state charges as a placeholder so that he could further investigate the federal charges so you're saying I think I understand now about inevitable discovery you're saying maybe they could have arrested him on that evidence but they didn't so now the burden on them is the burden is on them to show that they would have arrested him right he's only on the legally obtained evidence okay great right so the district courts analysis of conflicts with Oscar Torres and impermissibly restricts the exclusionary role the correct role under Oscar Torres is whether officers intend or expect that an arrest will lead to criminal prosecution and here no one can reasonably dispute that police were motivated by a criminal investigation and planned prosecution when they arrested the and had him fingerprinted most importantly they arrested him on criminal charges yes counsel on that point I I was a little unclear on what you think we said and Oscar Torres can you you just said it has to do with whether there are criminal charges or criminal investigation can you articulate for me the police cannot take fingerprints if what so so the rule of Oscar Torres is so the correct test is whether officers or intend or expect that an arrest will lead to criminal prosecution and really the only reason that Oscar Torres sorry the reason I'm asking is because isn't that always the case right you're arrested on criminal charges for a criminal prosecution that that seems to always be the case so I must be more nuanced than that but I'm having trouble understanding what it is well I actually don't think that it is more nuanced than that because Oscar Torres only came into existence because of the administrative detention and fingerprinting that took their during an immigration investigation and the court and Oscar Torres went through a whole analysis of the deterrent value of the exclusionary role in the two different contexts and explained exclusion wouldn't deter a lawful arrest intended solely for deportation because the exclusionary rule doesn't even apply in deportation proceedings yeah I think the context is very important for Oscar Torres I think you're right and perhaps I'm being too simplistic but could you could you state your rule for me when officers can't take fingerprints when or if what well they can't take fingerprints if it's the result of an illegal arrest but that's not the end of the analysis because the court then will apply the Wong Sun analysis to determine whether those fingerprints were obtained by exploiting the illegality or instead by some other means that sufficiently distinguishable to be perched at the primary taint so it's not this was you haven't argued on appeal that this was an illegal arrest no we are arguing that it is the fruit of the illegal search of his home that's correct okay so but I think that even under a different test even under a test that is more narrowly tailored to the intent of officers that the that the fingerprints would still be excluded here because before it was even arrested on state or federal charges the officers here were investigating him for federal charges involving his immigration status charges that they knew would involve running his fingerprints during the investigation and that was I'm sorry I'm sorry to keep coming back to this but so you said your rule the rule of the is that officers can't take fingerprints if it's the result of an illegal arrest you're not arguing on appeal that this was an illegal arrest so why why why is this an issue we are arguing that it is an illegal arrest because the arrest was the fruit of the unlawful search to be clear I didn't see anything in your brief saying there wasn't you know probable cause for arrest or anything like that no and we don't make that argument because there was probable cause that was based on the evidence they discovered during the unlawful search but you did say I think you agreed with me that there was in fact probable cause independent of the illegally obtained evidence that would have supported an arrest it's just that they chose they chose not to use that to arrest him because they didn't want to arrest him for that they had you know they wanted to arrest him for a more serious charge one that they would have to release them on I did not want to arrest him for the vape pen and it and it's clear that they can I ask and it's possible that I'm gonna be overlapping a little bit with Judge Rushing and I apologize what I am trying to get a handle on is let's assume for purposes of the argument that there's an illegal arrest here and so now we're trying to figure out as you said when is the taking of the fingerprints sufficiently attenuated from the illegal arrest that got the person into the station house and in a position to have his fingerprints taken and I would have thought that the answer under Davis and Hayes and Oscar Torres is if the arrest was for the purpose of getting the prints to tie this person to a specific crime like you've got a crime you're trying to figure out who did it and so you start as in Davis and Hayes just kind of rounding people up to see if you can match their prints to that crime and that seems very different to me from doing something like arresting someone and doing a standard sort of criminal investigative check or their outstanding warrants does this person use an alias what can we find in our databases about this person is that not right I may have but what I will say is even with a narrower test I mean even if you look at the intent of the officers here in making the arrest I think that the that the agent or detective Stewart was pretty clear on page 335 of the joint appendix that we he said we've used placed under arrest for the state charges for the marijuana until I could further the investigation on the firearms that were present in the house so his entire purpose in arresting him on these state charges was to conduct exactly the kind of investigation that happened but they didn't mean it's a prince to tie him to the guns well they needed the fingerprints in order to tie him to a status that would make his possession of the guns illegal because without them he told them that he was here illegally I it's it's not clear whether Stewart fully understood that until he had the Spanish-speaking INS officer or HSI officer speak to him I think that is the point in which it was clear that he was here illegally and not before and that was all part of the investigation that was intended you know that that was done while they were using the state charges as a placeholder I would like to take a moment to move to the vindictive prosecution question because that also presents some significant issues the prosecutors decision to charge be it with a more serious offense after he prevailed on his suppression motion violated due process because in this situation there is a reasonable likelihood of vindictiveness the Sixth Circuit's decision the United States versus Ladeau as well as the sports decisions and Wilson and Corbett support applying a presumption of vindictiveness in Ladeau the Sixth Circuit explained that the prosecutorial state in a successful dispositive suppression motion is virtually the same as the state that the Supreme Court identified in Blackledge is sufficient to justify a presumption he is successful motion eviscerated the government's case and the prosecutor had to dismiss it and begin again from square one Ladeau isn't distinguishable from this case in any meaningful way as on Ladeau the prosecutor had charging options and he chose to charge the more serious aggravated illegal reentry offense instead of the less serious entry offense well isn't it I mean isn't it distinguishable and in the main way that the parties are arguing over which is the district courts factual finding that that the government didn't have a reason to charge the aggravated reentry offense until much later when it discovered the alias and you know these other charges and these other with Ladeau and it all comes down to the district courts fact-finding that you that the parties disagree about well I think it comes down to actually what legal standard the court wants to apply and determining whether the presumption applies or not and the question is does that standard is that standard require the prosecutor to have knowledge or is it enough that the reentry charge was available all along and Supreme Court decisions in this court's decisions support applying a standard of availability is this prosecutorial misconduct I mean isn't vindictive prosecution a genuine animus standard we've said the Supreme Court have said that I mean the two prongs the prosecutor has to act with genuine animus and the defendant wouldn't have been prosecuted but for that animus so how can we create a sort of in idea that the prosecutor has all the knowledge of the government which makes a lot of sense in the Brady you know producing materials context why does that make sense in a context where we're asking did this prosecutor have genuine animus against this defendant well I think it makes more sense to apply that question and in the rebuttal stage than in the presumption stage because the Supreme Court's decisions and Godwin Pierce black legend this court's decision unveiled and Wilson all focus on the availability or the truck of the charges or the question whether it was impossible to bring the charges in the first instance which it wasn't in this case can I ask you a question about in the very similar context of vindictive sentencing you know if someone wins on appeal and goes back down and gets a higher sentence I thought the Supreme Court had made pretty clear that there is no presumption and or the presumption is rebutted if the district court in sentencing is relying on information that it didn't know about the first time it's sentenced whether or not like the thing itself had happened before or after the original sentencing in other words it was what was in the district courts head not what information might have been available out there in the world does that seem like it would transfer over I'm not sure that that's the line I'm not sure that that's the line that's drawn I know that in Godwin it was something that happened as a criminal conviction that happened subsequently and in another case it was facts that were developed later or you know the fact that the defendant had all right gone to trial later but but it ought to be the same rule we agree like same same analysis we're applying over on the sentencing side ought to apply over here I don't think so because this what happened after via prevailed on his suppression motion was that unfortunately the prosecutor was it was exposed is not having investigated his case previously to put it bluntly it made him look bad and nobody likes to have their mistakes exposed to judges or their bosses and be a successful motion exposed that the prosecutor hadn't prepared his case which which provides motivation for a vindictive charging decision so in that situation and I think it is distinguishable from the fact from the situation in which a sentencing judge learns additional information that existed but he was not aware of previously so my time is has run and I'll just in conclusion ask the court to vacate the judgment instruct the district court to dismiss the indictment or alternatively to order the suppression of these fingerprints and evidence derived from them thank you wait you've got some time on rebuttal miss Ray may it please the court Amy Ray for the United States your honors the district court properly denied both motions to dismiss and the motion to suppress I want to begin with the vindictive prosecution argument and say that you know that there are two requirements there has to be a motive to vindictive motive and also but for that vindictive motive the new charges would not have been filed now what the Supreme Court has held and this court has recognized is a presumption plays a role when the defendant cannot show those two things but the presumption plays a really important role which is it is serves the purpose of allowing the court to find a vindictive motive where the circumstances suggest that that motive was likely and that means all of the circumstances now contrary to miss Hester's argument this court in the Supreme Court have made clear that a pre-trial decision to add charges is usually not vindictive it actually requires a higher standard if anything than a post conviction claim of vindictive prosecution the purpose of the presumption is because what lies behind all of it is to make sure that defendants did not feel deterred from exercising their constitutional rights and so the question becomes what a defendant in this defendants position would a reasonable defendant feel deterred based on the totality of the circumstances and what goodwin says is it's not just where a prosecutor finds new evidence but it can also be where a prosecutor has a greater appreciation Goodwin's in the Supreme Court specifically recognized that part of a prosecution decision and process is where a prosecutor may realize later in the prosecution process that that the evidence has more significance than she or he realized now we take very serious issue with the suggestion that our prosecutor failed to prepare for trial or wasn't ready for something or in fact did anything wrong and the district court found that the prosecutor did nothing wrong in this case the prosecutor explain counsel I'm sorry yes can I can I ask you a questions right about a good win in your argument so I don't understand you to be arguing but tell me if I'm wrong that you know as a matter of law there can be no presumption in the pretrial context like end of story I take you to be arguing that you know good when suggested and we have said since then like you know it's pretty it's rare that you would find that presumption in the pretrial context maybe there shouldn't be one at all but that you are arguing whatever the we don't have to reach that here because clearly on the facts of this case no presumption is that right absolutely and I'm not saying that it never could occur I am saying though this court hasn't found it yet and I am saying that Ladeau is easily distinguishable and this court has not gone as far as the Sixth Circuit the Sixth Circuit has recognized and found pretrial presumptions to be appropriate now it is not to say that this court couldn't under certain circumstances the reason I mentioned good one is because the suggestion that a prosecutor has a duty at the beginning of the case to find every piece of evidence that supports the most serious charge that she could lodge against a defendant and then doesn't do that that the suggestion that they have to do that or be susceptible to a claim of vindictive prosecution a presumption that she was vindictive in prosecuting is just makes no sense whatsoever and it's not particularly it is completely divorced from the point of the vindictive prosecution which is to say would a defendant feel deterred well the district court found a defendant in these circumstances would not be deterred because the prosecutor didn't know and that he had been that he had been convicted of two serious felony convictions in Georgia or that he had been illegally and he'd been deported and come back now let's be clear part of why the prosecutor did not know is because his case agent ran the criminal history and none of it came up so even though the pretrial services report existed which was not conclusive especially on the deportation issue the case agent ran the criminal history of Francisco Villa and neither his prior deportation nor the prior convictions came up they didn't know about it and there's no duty for them to know about it this isn't a Brady situation this is when is it reasonable to impute vindictive purpose and it's not reasonable and the district court as an abuse of discretion standard or review was very reasonable in determining that it wasn't a there's no reasonable likelihood of a vindictive purpose in under the circumstances of this case and one of the point I would make about Ladeau in addition to just sort of factually it's distinguishable it also came up in the inverse procedural context which is that in Ladeau the district court found applied the presumption so on appeal the question was did the district court abuse its presumption here it's the opposite the district court did not find the presumption applied is it an abuse of discretion and the answer is no turning to the suppression issue here's the rule from Oscar Torres when police use an illegal arrest as an investigatory device in a criminal case for the purpose for the purpose of obtaining fingerprints without a warrant or fingerprints should be suppressed so when they use an illegal arrest we have no illegal arrest here whether or not the officers intended to arrest the defendant based on the bait pen that they found in his car or based on the additional vape pens they found in the house is immaterial because they found evidence in the car it's an objective standard it matters not what the officers intended to do or why they chose to arrest him or whether or not they intended to based on one or the other right it's an objective standard the objective standard is they had a vape pen from the car that independently supported his arrest and he was arrested for paraphernalia and they fingerprinted him for that on the basis of his arrest for those vape pens so there was no evidence and detention officer Steele testified that what brings the charge to the defendant and on that is checked fingerprint or no fingerprint but we had no illegal arrest that triggers that analysis but when if we get to that analysis the district court did not clearly err in finding that the purpose of this arrest was not to obtain the fingerprints it was to prosecute him for marijuana possession and possibly for the firearms but at the taken as an administrative as part of an administrative process the Speedy Trial Act issue I think turns in large part on the same issues that are presented in the vindictive prosecution claim other than at least the first part of it which is you know what is the date that we go from when we're calculating how long between the indictment and the trial do we begin with when he was indicted on the illegal reentry case I want to address one thing which is you know this was this prosecutors journey honest journey from you know realizing that his trial was coming up asking his his case agent to get the fingerprints and then the case agent or to run the case agent actually offered should I go ahead and run those fingerprints and this was before the suppression order entered and he she said yeah so they went ahead and did it and then shortly after the suppression order was entered they came back and realized okay he's got he illegally was deported before and he illegally reentered so it the date starts from the time of the indictment of the for the illegal reentry offense so there's not really a Sixth Amendment analysis but even if there is even if we go through the Barker factors the district court did not clearly air in its assessment of those factors is right let me ask you this is right let me ask you this yes under the circumstances could you have obtained a superseding indictment in this case we don't think so but I'll respond that with a couple of points one at the time that we decided to indict mr. via we knew that the other charges were going to be dismissed now this is you know we were also just in all candor to the court discussing whether to appeal that decision there were some pretty intense discussions about that but we did know that that indictment was going to be but that those charges would be dismissed it didn't make a lot of sense to try to supersede but even if we had I would suggest that no we couldn't or at least it would not be advisable to try to supersede based on the illegal reentry part charge the facts that we had to the elements were very very different the only similar element was that he was an illegal alien but also there's a chance that the defendant would have moved to sever because he probably would not have wanted the evidence of his prior convictions to be presented to the jury that we considered his firearm offense so we did not think that it was appropriate to supersede it was considered but it seemed like the most logical choice when we were faced with the fact that we were going to be dismissing the firearm charge anyway was to indict new and I will say there was no concern at that point about speedy trial issues that was not part of the calculus whether yes go ahead chair go ahead you go on the superseding indictment question I'm looking at what other circuits have said about this question of when the speedy trial right when that clock starts running for constitutional purposes when you have new charges does it does it matter that the charges are brought in a superseding indictment versus then a new indictment in a new case or it seemed to me it matters more how similar the conduct is or whether it arises out of the same transaction I know courts have different standards for this and I know the parties didn't really take a position on that but how relevant is whether it's in a superseding indictment or not your analysis so I I would say judge rushing that I did not find in the defendant didn't cite a case where the where it was held that there was a new indictment and that related back to the original and those cases may exist but the it is important whether or not in the supersede even in the superseding context how close they were and whether or not they are tied to a similar set of facts and these aren't this wasn't he had he possessed nine five eight firearms in his house that was the primary conduct that we were talking about with the firearm offense and obviously very different conduct with the illegal reentry offense so I don't think maybe that that the the conduct question should mean that the indictment question is really up to the government right I mean the defendant can move to sever whatever but it's up to you guys whether you choose to put it in and superseding indictment or a new one so I should that factor into the rule at all I mean I don't think so unless there's you know it perhaps in a context in which it was very clear that we could and should have I mean it's hard for me to even imagine that circumstance because then you're more likely in the vindictive prosecution realm I would suggest than in a speedy trial act or speedy trial constitutional violation context here we just didn't have we didn't think that the facts supported filing a superseding indictment we did not think that they were close enough under the joint rules of rule 8 and the factors that we would consider and again we knew that the indictment was going to be the charge against him on the firearm charge was going to be dismissed anyway when we made the decision that second point about the joinder I mean it's not strictly the same but that's I think really where the action is right as are these you know other courts are looking at is this conduct similar enough is it all does it all come out of the same transaction are there different elements you know whatever their standards are they're looking at you know whether the whether the clock should relate back to the original indictment based on the at the end of the day what's the question whether or not the defendant would be prejudiced by it all I mean it really comes down to in a defendant is not prejudiced if you're talking about brand new charges that don't relate back and there's no unfairness and that's why the Barker test is a balancing test and the most one of two of the most important factors are did the defendant assert his speedy trial right in a timely manner and could he show prejudice and none of those things district court didn't clearly err in finding that he didn't show prejudice in this point in this case certainly not prejudice that's related to the speedy trial concerns which are trial concerns and not sentencing concerns and in this court held in Lozano for example that sentencing concerns generally are too speculative it was in Lozano and so the the possibility of an appeal is just too speculative to fall within the kind of Sixth Amendment speedy trial concerns with this with the Sixth Amendment protects so yes I can I ask you a question yes please can I ask you a question about the other end of the clock that I found confusing you know in part of your brief you argue actually fall back pretty fast to look even if we assume for a minute that the first indictment starts the clock we're only talking about 14 months here we're talking about the time between the first indictment and I think between the second indictment 14 months but why would the clock stop at the second indictment why doesn't it stop on the date of the trial or maybe the day on which the district court rules on the speedy trial motion I don't understand why it stops when the second indictment is filed assuming for a minute this is just your alternative argument that it starts with the first indictment or the first it doesn't that was my mistake oh and I apologize for that mistake yeah that was that right I was really confused about that about the amount of delay because we have cases where we only count the delay which we don't we don't call the whole period it's just the period that seems like inappropriate I guess or the period that wasn't the defendants fault I really what I really was pretty confused about what is delay and what it's not the Constitution thank you judge rushing and clearly I was as well I guess when I went back to it and sort of looked at it I thought after I read his Hester's reply brief I thought yeah okay there were definitely cases that talk about trial between the indictment and the trial and so I figured it truthfully I don't think that 19 months versus 14 months as a constitutional matter really matters very much and if you look at the cases and what kinds of delays have been held to be constitutionally infirm 19 months really isn't in the ballpark unless the defendant can show prejudice that the defendant hasn't shown in this case but I just felt like when I looked at it all that I probably should have erred on the side of acknowledging so hence my my statement today that I think there were cases that say it ends at the trial so from the indictment to the trial and of course the Fifth Amendment is from up to the date the time of indictment pre do we do we remove oh sorry judge Harris go ahead no no you go ahead judging well I was curious about whether we remove the time that the defendant asked for for a delay and because not only because he asked he asked for it and he asked for it not just because the judge had ruled they were that was not the reason but he also says he's waving his speedy trial rights and he doesn't restrict it to the speedy trial act he says I'm waiting my speedy trial right so do we do we take that amount of time out of what it counts as delay or does that is that not relevant under how this is counted I really don't know yeah I don't know either but I think that this court could choose to say that they wait he waved it with respect to the constitutional analysis because it wasn't because he didn't use those words you know I'm intentionally waving my constitutional claim then I feel like it also probably if I were looking at it would say that that does count in terms of the time but where those continuances come in fairly is of course the reasons for the delay once we get to those Barker factors so I think that he's shown enough to get to the Barker factors if and it's really important if if we start from that first indictment which I don't think this court can or should but if we start from the first indictment then I think he gets to the Barker factors and those factors the district court reasonably found way against a finding of a constitutional violation if your honors don't have any further questions we respectfully request that this court affirm the judgment of the district court and hold that this prosecutor did not there was no no insufficient evidence of the prosecution thank you thank you and miss Hester you've got some time and can I actually start you with a question about this speedy trial clock I really I spent way too much time trying to figure out the stop date for the clock and it seemed to me that we have not been entirely clear about this but that it's supposed to be either the time of the trial or maybe the time the district court rules on the motion because at that moment the district court may not know how much more delay will be involved but in this case the district court said specifically in its opinion that at least as the district court understood your challenge was confined to the delay before this second indictment 14 months and that you are raising no challenge to the delay between the indictment and the scheduled trial date in January so so the district court thought the only issue in front of it was the 14 months between the arrest and the second indictment so what do I do with that well I mean I think the reason for that of course is because that's the amount of time that had elapsed at the time but that the motion was being considered no more time had elapsed by the time the motion is being considered but so I'm not sure what what to do with that except to say that I think that the delay that was attributable to the government's failure to investigate I mean I would agree that all of that delay had occurred by the time they had recharged and the district court had ruled on the second set of motions I mean by that time the court was moving the case along I mean really the delay was the district court's move on the initial suppression motion for ten months and the government's failure to investigate their case which caused them to then bring a new indictment after the first one was dismissed whereas if they had brought it all together that second you know litigation of that second case would have been necessary but I don't have I don't have a clear bright line test for the court I'm afraid under those circumstances I would like to move back to the vindictive prosecution issue it appears that the government is now arguing that Ladeau should not apply they did not argue that in their brief I don't think they should be heard to argue that now but in any event they can't cite a case that rejects the Ladeau rule and this isn't a pretrial charging decision the only reason that this did not occur post conclusion of the original case is because the government was had the control of over that case got dismissed or not so as Ladeau found this is the equivalent of a post trial decision to recharge it's basically the same type of situation that it would be after a person appeals and requires the government to start over from square one the effect is the same either way the government also argues that the prosecutor didn't know and that should distinguish this case from others in which the presumption of vindictiveness is applied but again they don't fight any case where a prosecutor had information and didn't look at it and that prevented the presumption of vindictiveness from applying and if the court looks again at those cases that I cited good one North Carolina versus Pierce black ledge this court's decision and Wilson all of those cases talk about impossibility of proceeding on the charges at the outset and as I explain the exposure of the prosecutors failure to prepare his case which is essentially what the government's arguing that that's not that that can't be a reason why that can't be a valid reason because it is not inconsistent with a vindictive motive it's quite consistent with a vindictive motive that a prosecutor just like any other person having his mistake exposed would would have a motivation to be vindictive and response with respect to the government's argument about abuse of discretion on the vindictive prosecution issue that really doesn't matter because it's a legal question for this court to decide whether the district court ruled in favor or against the vindictive prosecution issue it's all legal issues that this court reviews de novo either way and finally the government's articulation of the Oscar Torres rule would limit that rule to what Hayes and Davis said and this court and Oscar Torres expressly stated that it was going beyond the rule that was stated and Hayes and Davis so so the government's articulation of that rule is just not workable counsel how can we go beyond the rule articulated in Hayes and Davis I think I'm just misunderstanding what you're saying I mean obviously Hayes and Davis you know set the rules for us in terms of how to do that attenuation inquiry in this context how can we go beyond that what do you mean by well actually they didn't because what it because what the Supreme Court said in Davis versus Mississippi is fingerprint evidence it is no exception to the exclusionary rule it was just applying it in that particular situation and it noted other situations that it didn't have occasion to consider such as whether police could obtain fingerprints on reasonable suspicion or with you know something whether they write in the field right that's not implicated here no that's not implicated here but I think well what the court said in Oscar Torres is that we're the rule we're articulating is not expressly articulated in Hayes and Davis because it's a different situation but I think that the court the Oscar Torres rule is peculiar to the immigration context I think absent that administrative detention the court simply applies the Wong Sun exclusionary rule and asks whether the taint is so attenuated that exclusionary rule doesn't apply okay thank you your honor thank you very much thank you both for for appearing before us this afternoon and for your assistance and we are sorry we cannot greet you in person but we hope that you stay well and that we will see you in Richmond very soon thank you judge Harris thank you all
judges: Pamela A. Harris, Allison J. Rushing, Henry F. Floyd